C. W. GLOTZBACH, District Director of Internal Revenue for the District of Virginia, Petitioner,

v.

Arthur P. KLAVANS and P. A. Agelasto, Jr., Respondents.

Misc. 3671.

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 4, 1961.

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for petitioner.

P. A. Agelasto, Jr., Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

In proceedings requesting a writ of attachment against the respondents, the District Director of Internal Revenue seeks the entry of an order directing that certain books and records of the respondent, Klavans, be turned over to Internal Revenue agents. Klavans is a sole proprietor of a jewelry business operating under the name of Art Jewelers.

During the spring of 1960, Wade, a revenue agent, visited Klavans at his place of business and advised that he was making a routine audit. Upon a preliminary examination certain irregularities were discovered and Wade then advised Klavans that an audit would have to be made. On September 26, 1960, Wade, accompanied by Special Agent Warburton, again called upon Klavans. Following formal introductions, Warburton told Klavans that he was there to make an investigation, and that Klavans was not required to make any statement or give any information, and any statement made by him could be used against him. Warburton did not advise Klavans of any right to counsel. Klavans was put under oath and then agreed that certain records pertaining to his jewelry business could be examined by the agents. Wade had previously noted that the excise taxes had been reported on an installment basis and that cards indicating taxable items had been altered by erasures. The agents worked on the records during the afternoon of September 26, 1960, but did not finish.

On September 27, 1960, pursuant to agreement with Klavans, the two revenue agents returned. Klavans had made a room available and the agents spent the entire day examining the records covering a period of six months from January to July, 1958. They did not complete their examination by closing time and left after telling Klavans that they would return to resume their duties on the following day. At no time up to this moment had Klavans failed to cooperate and the records were turned over to the agents without objection. Indeed, Klavans had initially indicated a willingness to permit the records to be removed from his office, but as some of these records were required in the day-to-day business operation, he asked the agents if they could remain in his establishment.

Early the following morning the respondent, Agelasto, an attorney, telephoned Warburton and advised that the records were in his custody and would not be surrendered because of the attorney-client relationship and that such action would be forcing Klavans to testify against himself. On December 13, 1960, the agents went to Agelasto's office and were told that he was working on the records and would not produce them. Thereafter a summons was issued against both respondents and, while they appeared, they refused to produce the records. Warburton admits that there is a possibility of a criminal prosecution against Klavans.

It is conceded by the respondent, Agelasto, that if his client, Klavans, may be compelled to produce his records, Agelasto may likewise be required to deliver them. This appears to be the general principle of law in such cases. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423; Falsone v. United States, 5 Cir., 205 F.2d 734; Gretsky v. Miller, D.C.Mass., 160 F.Supp. 914.

The issue is, therefore, where a party has clearly and knowingly waived his rights and permitted an examination of certain of his records for a period of two days, may he thereafter withdraw such permission and terminate the examination? The Government contends that it is a single proceeding and that

Klavans, having voluntarily made his records available with full knowledge of his constitutional rights, has waived his immunity under the Fifth Amendment and cannot now invoke it insofar as the examination is concerned. The Government does not urge that Klavans is estopped from invoking his immunity in a possible subsequent proceeding. Respondents argue that Klavans was permitted to assert his immunity privilege at any time, thereby stopping the investigation.

■ The question presented is a novel one, and perhaps of first impression. It differs from the ordinary situation in which a witness voluntarily takes the stand, testifies as to matters which incriminate him and thereafter refuse to go further into these matters, claiming his constitutional immunity. In Brown v. Walker, 161 U.S. 591, 597, 16 S.Ct. 644, 647, 40 L.Ed. 819, it is said:

> "Thus, if the witness himself elects to waive his privilege, as he may doubtless do, since the privilege is for his protection, and not for that of other parties, and discloses his criminal connections, he is not permitted to stop, but must go on and make a full disclosure."

But where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, it is said that the witness is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him. McCarthy v. Arndstein, 262 U.S. 355, 359, 43 S.Ct. 562, 67 L.Ed. 1023.

The foregoing authorities raise the additional question—what is an "actual admission of guilt or incriminating facts?" In United States v. St. Pierre, 2 Cir., 132 F.2d 837, 840, 147 A.L.R. 240, the defendant testified to having committed a crime, but later refused to divulge the name of his victim. The majority, in an opinion by Judge Learned Hand, held that he must go on and make a "full disclosure" as required by the language in Brown v. Walker, supra; the disclosure of the victim being "only a detail of what he had already confessed." Judge Frank dissented and pointed out that the Fifth Amendment was intended to protect against punishment, as opposed to mere disgrace, and that the defendant could quite properly stop short of identifying his victim.

■ In the present proceeding, if there is any incriminating evidence it is contained in the records of Klavans which were freely, voluntarily, and knowingly surrendered to the agents. When Klavans turned over these records, he made a "full disclosure" to the extent of the records which were in the process of examination. There is no suggestion that Klavans necessarily delivered all of his records to the agents, and the waiver upheld in this case does not per se justify a general exploratory examination of every record ever possessed by Klavans. While the Court does not recall the particular records made available to the agents, as well as the years contained in such records, a further hearing on this question may be required, but it seems only logical to permit the agents to complete the examination of such books and records as were previously delivered to the agents.

To hold otherwise would completely destroy the theory of waiver. It would mean that Klavans could interrupt the examination at any moment and that the waiver existed only for the moment that the agent read a particular word, a single figure, or solitary entry. Klavans waived his immunity, not with respect to individual entries, but relating to the books and records under examination which, of necessity, includes the contents of same.

■ We are not concerned with the question of immunity relating to the use of material provided voluntarily in one proceeding, but objected to in a prosecution under another proceeding. Klavans and his counsel rely upon Lisansky v. United States, 4 Cir., 31 F.2d 846, 67 A.L.R. 67, and Nicola v. United States, 3 Cir., 72 F.2d 780. We find no fault

with these decisions. Should it develop that Klavans is subsequently prosecuted, it is clear that he cannot be required to produce the records at the trial which he previously permitted the agents to examine. Secondary evidence would be admissible to show their contents. A waiver of the privilege must occur in the same proceeding in which it is sought to be invoked. Poretto v. United States, 5 Cir., 196 F.2d 392.

■■ There was, in fact, only a single proceeding underway, namely, an investigation of certain books and records belonging to Klavans. Initially he had the legal right to refuse permission to examine any books or records, but, when this right was voluntarily and knowingly waived, the right to continue the examination remained for any reasonable period of time required for the agents to complete such examination of the books and records previously delivered to them covering the year or years contained therein. The temporary cessation of the examination to permit the business establishment to close for the night does not create a separate proceeding. The true test is set forth in United States v. Miranti, 2 Cir., 253 F.2d 135, where the court looks to the passage of time and the events occurring during the interval.

■ Factually the matter rests largely in the discretion of the trial court. Mason v. United States, 244 U.S. 362, 366, 37 S.Ct. 621, 61 L.Ed. 1198; Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; United States v. Goodman, 4 Cir., 289 F.2d 256. The constitutional safeguards should be liberally construed in favor of those to be protected, and the theory of waiver should not be unduly extended, but, as to the instant proceeding, it is a classic situation of waiver *vel non*, and to hold otherwise would emasculate the doctrine of waiver.

An order will be entered directing Klavans and Agelasto to deliver such books and records as were previously made available to the agents on September 26–27, 1960.