Harve D. MASON and Pat J. Mason, Petitioners-Appellees,

v.

Ralph J. PULLIAM (Special Agent/Intelligence Division, IRS) and Jim Kelly (Supervisor/Intelligence Division, IRS), Respondents-Appellants.

No. 75-4300.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1977.

John W. Stokes, U. S. Atty., William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., Scott P. Crampton, Asst. Atty. Gen., Robert E. Lindsay, Michael J. Roach, Attys. Tax Div., Gilbert E. Andrews, Act. Chief, App. Sec., U. S. Dept. of Justice, Washington, D. C., for respondents-appellants.

Stanley F. Birch, Jr., Greer, Sartain, & Carey, Gainesville, Ga., for petitioners-appellees.

Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN,* District Judge.

CLARK, Circuit Judge:

On December 4, 1974, Internal Revenue Service Special Agent Ralph Pulliam requested that Harve D. Mason allow Pulliam to remove and examine certain of Mason's

---

* Senior District Judge of the Eastern District of Virginia sitting by designation.

business records. Mason granted the request and Pulliam took the records into his possession that day. On December 11, 1974, Mason's attorney demanded the immediate return of all materials submitted to the agent the week before. Special Agent Pulliam refused and this action was brought.[1] The district court ordered that the materials and all copies made subsequent to the demand for return be delivered to Mason. We affirm.

■ The district court properly concluded that the doctrine of "anomalous jurisdiction" conferred power to consider an order to return a citizen's property when the consent that is the sole justification for the government's possession of the property is withdrawn. The judgment appealed is in part affirmed on the basis of this well-reasoned treatment of the anomalous jurisdiction doctrine. *Mason v. Pulliam,* 402 F.Supp. 978 (N.D.Ga.1975). One additional issue raised by the agents on appeal needs consideration. It is the position of the agents that when Mason voluntarily permitted Pulliam to take possession of his papers for the purpose of examining and copying, he forever waived his Fourth Amendment rights and any underlying reasonable expectations of privacy. The agents contend that "a reasonable expectation of privacy can only be lost once, and requiring the government to return the taxpayers records instantly on demand would serve only to frustrate a legitimate government investigation without in any way furthering the purposes of the Fourth Amendment." This argument is erroneous.

■ In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court made an extensive explication of the concept of "consent" in the Fourth Amendment context.

*Schneckloth* teaches that, in essence, consent is assent without coercion; and, to determine whether consent is free, the totality of circumstances surrounding the request for and agreement to the search must be examined. Though the giving of consent to make a search may be seen as waiving a person's Fourth Amendment rights, *id.* at 235, 93 S.Ct. at 2051, such a waiver should not be governed under the strict standards applied to waiver of other constitutional rights. *Id.* at 246, 93 S.Ct. at 2057.

Nothing in *Schneckloth* suggests however that a consent which waives Fourth Amendment rights cannot be limited, qualified or withdrawn. Other courts have indicated that a Fourth Amendment consent can be effectively limited. In *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir. 1971) the court ruled in general terms that consensual searches are reasonable only if kept within the bounds of the actual consent given. The defendant in that criminal prosecution had consented to a search for narcotics. After the search had commenced, the government officers started examining certain of the defendant's papers. At that point, the defendant stated "[t]he search is over. I am calling off the search." Noting the obvious unlikelihood of finding narcotics within private papers, the court held that the officers had unequivocally gone beyond the scope of the consent and that any items found in this perusal of private papers were not admissible. The court did not consider the effectiveness of defendant's revocation, but instead relied solely on the fact that the officers had gone beyond the scope of the consent originally given.[2] *United States v. Bily,* 406 F.Supp. 726 (E.D.Pa.1975) involved the search of a defendant's house and garage for pornographic films. After an investigation of

---

1. Mason's wife, Pat J. Mason, was also a named plaintiff. Jim Kelly, a supervisor of Special Agent Pulliam, was additionally made a defendant.

2. *See generally United States v. Miller,* 491 F.2d 638, 650 (5th Cir.), *cert. denied,* 419 U.S. 970, 95 S.Ct. 236, 42 L.Ed.2d 186 (1974), where the court considered the argument that consent

had been limited, but found that the evidence demonstrated the limitations were withdrawn by the defendant's later actions; *United States v. Griffin,* 530 F.2d 739, 744 (7th Cir. 1976), where the court averred that limitations on consent were valid but found the materials not to have been acquired by officers acting outside these limitations.

approximately two hours in which certain films were discovered, the defendant stated "[t]hat's enough. I want you to stop." This demand "was a revocation of consent that took immediate effect." *Id.* at 729. Only the seizures of film preceding this revocation were held valid.[3]

When the basis for a search or seizure is consent, the government must conform to the limitations placed upon the right granted to search, seize or retain the papers or effects. Since Mason's action was unilateral and contained no agreement as to duration it was implicitly limited by Mason's right to withdraw his consent and reinvoke his Fourth Amendment rights. This withdrawal and reinvocation does not affect the validity of Pulliam's actions prior to the time he received notice that his right to retain Mason's papers was gone. The district court correctly refused to require the return of copies made prior to the demand by Mason's attorney.

Precedents concerned with the waiver and attempted reinvocation of Fifth Amendment protection which are urged by the agents are not apropos. When an accused takes the stand in a criminal trial, his "voluntary offer of testimony upon any fact is a waiver as to all other relevant facts because of the necessary connection between all. Any voluntary disclosure by the accused, except in the most unlikely situation, distorts their probative picture." 8 Wigmore on Evidence § 2276 at 459–60 (3d Edition, 1940) (emphasis removed), cited with approval in *United States v. Brannon,* 546 F.2d 1242, 1246 (5th Cir. 1977). As Wigmore continued,

> The accused has the choice [of whether to waive his Fifth Amendment rights] at the outset, unhurried and with full knowledge that all questions will relate to his incrimination . . . .

8 Wigmore, *supra* at 460. On the other hand, a taxpayer presented with the IRS request for consent to examine papers, is often unable to make a deliberate, advised decision whether to waive his Fourth Amendment rights. In further contradistinction to the testimony of an accused at trial, waiver and then reinvocation of Fourth Amendment rights, though presenting some possibility that the search will reveal only a partial and therefore inaccurate picture, is not accompanied by the urgent and perhaps irremediable need for a complete evidentiary presentation.

The trial context is both immediate and permanent in fixing the rights of both parties. A defendant's actions are neither unilateral nor without a benefit to him. When he makes a deliberate choice to waive a right he gets the benefit of his action and cannot rue back his bargain in whole or in part. This is altogether different from the circumstances surrounding Mason's agreement to Pulliam's request. Mason gained no advantage. Pulliam suffered no detriment. If Pulliam could have demanded production then, he is in at least as good a position to demand it now with the added benefits of the partial examination he has made. The Supreme Court made clear in *Schneckloth v. Bustamonte, supra,* 412 U.S. at 241, 93 S.Ct. at 2055, that there is a "vast difference between those [Fifth and Sixth Amendment] rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment." Just as different standards for waiver of those rights exist, different criteria for judging the effects of an attempted withdrawal of the waiver should also be used.

AFFIRMED.

WALTER E. HOFFMAN, District Judge, concurring specially:

As the author of the opinion in *Glotzbach v. Klavans,* 196 F.Supp. 685 (E.D.Va., 1961),

---

**3.** In *United States v. Young,* 471 F.2d 109 (7th Cir. 1972), *cert. denied,* 412 U.S. 929, 93 S.Ct. 2755, 37 L.Ed.2d 156 (1973), a search was stopped when the defendant indicated he was withdrawing his consent. Although the court described the effort as an "attempted rescission" the holding of the case was that the "attempt" did not retroactively render the original consent invalid or preclude the use of incriminating evidence discovered before the withdrawal was announced.

some explanation is due. In that case I held that a waiver once made remained in effect until the examination of the books and records was complete. As Judge Clark so ably notes, the recent authorities clearly indicate that a waiver may be withdrawn under certain circumstances but, to the portion that was waived, the party waiving his right cannot retract. If *Glotzbach v. Klavans, supra,* were before me today, I would not permit the completion of the examination.