**Reversed and Remanded and Majority and Dissenting Opinions filed November 13, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00208-CR

---

## JONATHAN ALBERT LEAL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 12CR0947**

---

# D I S S E N T I N G   O P I N I O N

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless the warrants meet certain requirements.[1] The Supreme Court of the United States has

---

[1] U.S. Const. amend. IV; *see also* Tex. Const. art. I, § 9.

determined that, where a search is undertaken by law-enforcement officials to discover evidence of criminal wrongdoing, the Fourth Amendment generally requires the obtaining of a judicial warrant.[2] In the absence of a warrant, a search is reasonable under the Fourth Amendment only if it falls within a specific exception to this general warrant requirement.[3] One such exception is a search conducted pursuant to consent.[4]

Today, this court faces as issues of first impression (1) whether section 724.012(b)(3)(B) of Texas's implied-consent statute falls within the consent exception to the warrant requirement and (2) whether consent under this particular provision is revocable. More specifically, we must decide whether this subsection of the statute provides a basis for concluding that appellant Jonathan Albert Leal irrevocably consented to the blood draw. If the trial court's ruling is supported by the record, we are to affirm that ruling if there is any valid theory of law that supports the ruling, even if the theory was not presented to the trial court and even if the theory is not advanced by the prevailing party on appeal.[5]

The ultimate touchstone of the Fourth Amendment is reasonableness.[6] We are to examine the totality of the circumstances to determine whether a search is reasonable.[7] The Fourth Amendment's protection against unreasonable searches and seizures requires courts reviewing searches to balance opposing interests and

---

[2] *See Riley v. California*, —U.S.—, —, 134 S. Ct. 2473, 2482, 189 L.Ed.2d 430 (2014).

[3] *See id.*

[4] *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973).

[5] *Alford v. State*, 400 S.W.3d 924, 928 n.2 (Tex. Crim. App. 2013); *Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

[6] *Riley*, —U.S. at —, 134 S. Ct. at 2482.

[7] *Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006).

determine the reasonableness of a particular search in a particular context.[8] Whether a search is reasonable depends upon the degree to which it intrudes upon an individual's privacy and the degree to which it is needed to promote legitimate government interests.[9] Thus, context is crucial in assessing reasonableness.

**Validity of Implied Consent to Blood Draw by DWI Repeat Offenders**

In assessing the validity of the implied consent in today's case, the issue is whether police reasonably could assume that appellant, who twice before had been convicted of driving while intoxicated (DWI), irrevocably consented to a blood draw[10] through his conduct in operating a motor vehicle on Texas's public roadways. Texas Transportation Code sections 724.012(b)(3)(B) and 724.011 effectively advise individuals with two or more prior DWI convictions ("DWI Repeat Offenders") that police will interpret a DWI Repeat Offender's conduct in operating a motor vehicle as giving consent to a blood draw in the event of a new DWI arrest.[11]

Implied consent, if otherwise valid, is sufficient to support the consent exception.[12] The majority, however, rejects implied consent and suggests that despite the statute's plain statement of the consequences flowing from a DWI arrest for a DWI Repeat Offender, a police officer cannot interpret a DWI Repeat Offender's conduct in operating a motor vehicle as consent to a blood draw because such an interpretation would establish a categorical rule and categorical

---

[8] *See Scott v. Harris*, 550 U.S. 372, 383, 127 S.Ct. 1769, 1778, 167 L.Ed.2d 686 (2007).

[9] *Samson*, 547 U.S. at 848, 126 S.Ct. at 2197.

[10] Transportation Code Section 724.012 provides that a police officer "shall require the taking of a specimen of breath or blood." Tex. Transp. Code Ann. § 724.012(b) (West 2014). Under this statute, an officer may take a breath sample rather than a blood sample.

[11] Tex. Transp. Code Ann. §§ 724.011, 724.012(b)(3)(B) (West 2014).

[12] *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

rules are prohibited by the Supreme Court's opinion in *Missouri v. McNeely*.[13] The majority says that "whenever a person has been arrested for DWI and is a repeat offender, consent will necessarily exist because section 724.012(b)(3)(B) says it does." [14] This oversimplification of how this provision of the implied-consent statute operates skews the focus away from the important contextual considerations that should drive the court's analysis. Analyzing consent in context leads to the opposite conclusion.

Consent exists because individuals are deemed to know the law.[15] This is especially true for recidivists. By nature, they are reoffenders who, after being convicted, break the same law again. In crafting many of our state's statutory schemes, Texas lawmakers recognize the distinct risk posed by recidivists and identify specific consequences for reoffenders.[16] Section 724.012(b)(3)(B) provides that, for a particular class of DWI reoffenders, taking the action of driving on public roadways is consent to a blood draw.[17] Accordingly, police reasonably can assume that a DWI Repeat Offender who uses public roadways and is charged with knowledge of laws governing such use, consents to a blood draw in the event a police officer has reasonable grounds to believe that the DWI Repeat Offender is driving while intoxicated. Just as it is reasonable for police officers to assume that the category of individuals who speak the words, "Yes, I give you consent to search," in fact, have consented, a police officer reasonably can interpret the

---

[13] *See* maj. op. at ___; *Missouri v. McNeely*, —U.S.—, —, 133 S.Ct. 1552, 1561, 185 L.Ed.2d 698 (2013).

[14] Maj. op. at ____.

[15] *See* Tex. Penal Code Ann. § 8.03 (West 2014); *Johnson v. State*, 423 S.W.3d 385, 388 n.2 (Tex. Crim. App. 2014).

[16] *See, e.g.* Tex. Penal Code § 12.42 (West 2014).

[17] Tex. Transp. Code Ann. § 7.012(b)(3)(B). This opinion does not address whether an individual who drives on a public street has consented to a search based of any other section of Texas Transportation Code Section 7.012.

conduct of a DWI Repeat Offender in driving a vehicle on the public street as giving consent for the blood draw.[18]

## Irrevocability of Consent

The majority suggests that, in any event, appellant effectively revoked any consent for the blood draw. But, under Texas's statutory scheme, consent by a DWI Repeat Offender cannot be revoked.[19] The majority states that there is a categorical rule that an individual's consent to a search is limited in scope and that such consent is always subject to the right of withdrawal.[20] The Supreme Court has found otherwise. Revocation is not always an option. In various contexts, the "right of withdrawal" has been found unreasonable and unavailable. [21] Drawing from this body of jurisprudence and the intent and purpose of the Texas Legislature in creating this particular provision of the implied-consent statute, it makes more sense to conclude that revocation of implied consent is not an option for a DWI Repeat Offender.

Consent affects the balance of interests between an individual and the government.[22] The balance can tip for or against revocation of consent, depending on the circumstances. For example, in the context of searches of probationers' homes, the Supreme Court, in *United States v. Knights*, relied on a probationer's

---

[18] As the majority acknowledges, the reality that a driver must make a tough choice, between driving and knowing that his conduct in driving will be interpreted as consent, does not render the consent invalid.

[19] *See* Tex. Transp. Code Ann. § 724.011, *et seq.*

[20] *See Mason v. Pulliam*, 557 F.2d 426, 428 (5th Cir. 1977).

[21] *See U.S. v. Spriggs*, 30 F.3d 132, 132 (4th Cir. 1994), *cert. denied*, 513 U.S. 1159, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995) (holding that visitor to prison could not revoke consent to search); *U.S. v. Knights*, 534 U.S. 112, 116, 122 S.Ct. 587, 590, 151 L.Ed.2d 497 (2001) (holding that probationers may not revoke consent to searches); *U.S. v. Herzbrun*, 723 F.2d 773, 775 (11th Cir. 1984) (holding that airline passengers may not revoke consent to search); *U.S. v. Haynie*, 637 F.2d 227, 230 (4th Cir. 1980) (same).

[22] *See U.S. v. Knights*, 534 U.S. at 116, 122 S.Ct. at 590.

5

signed form[23] to enforce the probationer's agreement to "submit to a search 'by any probation officer or law enforcement officer.'"[24] In concluding that the probationer's motion to suppress evidence from such a search should be denied, the Supreme Court reasoned that:

> The judge who sentenced Knights to probation determined that it was necessary to condition the probation on Knights' acceptance of the search provision. It was reasonable to conclude that the search condition would further the two primary goals of probation— rehabilitation and protecting society from future criminal violations. The probation order clearly expressed the search condition and Knights was unambiguously informed of it. The probation condition thus significantly diminished Knights' reasonable expectation of privacy. 534 U.S. at 119–20, 122 S.Ct. at 591–92.

In weighing the government's interest in *Knights*, the high court, recognizing the context, noted that the probationer is more likely than the ordinary citizen to violate the law.[25] In light of this reality, the Supreme Court essentially determined that the State, to further its goal of protecting the public from past offenders, may condition the granting of a privilege upon the past offender's irrevocable consent to a search.[26] And, in the context of parolees, the Supreme Court found it

---

[23] The Supreme Court of the United States also has upheld searches of parolees based on statutory scheme as opposed to the parolee's signature on a form. *See Samson v. California*, 547 U.S. 843, 857 (2006).

[24] *Knights*, 534 U.S. at 116, 122 S.Ct. at 590. The Court of Criminal Appeals of Texas has held that consent given by a probationer in accepting a probation condition is invalid under the Fourth Amendment and Article 1, Section 9 of the Texas Constitution. *See Tamez v. State*, 534 S.W.2d 686, 690–92 (Tex. Crim. App. 1976). *U.S. v. Knights* overruled *Tamez* with respect to the Fourth Amendment. *See Townes v. State*, 293 S.W.3d 227, 230–31 (Tex. App.—San Antonio 2009, no pet.). The Court of Criminal Appeals has held that Article 1, Section 9 of the Texas Constitution does not provide any greater right than the Fourth Amendment. *See Hulit v. State*, 982 S.W.2d 431, 437 (Tex. Crim. App. 1998). Even if the Texas Constitution did provide a greater right, the DWI search is based upon probable cause unlike the search probation condition determined to be too broad in *Tamez*. *See Tamez*, 534 S.W.2d at 692.

[25] *See id.*

[26] *See id.*

6

significant that "in most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.[27,][28] Significantly, the high court reasoned that the State is not required to "ignore the reality of recidivism or suppress its interests in 'protecting potential victims of criminal enterprise' for fear of running afoul of the Fourth Amendment."[29]

The Supreme Court's consideration of the "reality of recidivism" as key to the government's interest in protecting potential victims of crime has obvious application in the context of the DWI Repeat Offender, who poses a grave risk to public safety on roadways. Courts have observed that "an automobile in the hands of a drunk driver can be just as lethal a weapon as a gun"[30] and have "repeatedly lamented" the "increasing slaughter on our highways. . . now reach[ing] the astounding figures only heard of on the battlefield."[31] The high court's determination that the State is not required to suppress its interests in protecting potential victims of crime out of concern of stepping on the Fourth Amendment is particularly relevant and compelling in the repeat-offender drunk-driving context.

Similar public-safety concerns have prompted courts to fashion special exceptions to the warrant requirement and to disallow revocation of implied consent given in exchange for a privilege. For example, in considering consent given in exchange for the benefit of air travel, courts have disallowed revocation, holding that officials are not required to ignore the attendant dangers of air piracy.

---

[27] Similarly, for DWI Repeat Offenders the State of Texas has conditioned the privilege of driving upon implied consent to a blood draw. *See* Tex. Transp. Code Ann. §§ 724.011, 724.012(b)(3)(B).

[28] *See Samson*, 547 U.S. at 850, 126 S.Ct. at 2198.

[29] *Id.* at 849, 2198.

[30] *U.S. v. Tristan-Madrigal*, 601 F.3d 629, 633–34 (6th Cir. 2010) (internal quotations omitted).

[31] *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 2486, 110 L.Ed.2d 412 (1990) (internal quotations omitted).

The Eleventh Circuit concluded, even before the increased concern following the infamous terrorist attacks on America on September 11, 2001, that to keep the airways safe from "the intense danger of air piracy," airports are "critical zones" in which special Fourth Amendment considerations apply.[32] Courts have determined that an individual who begins the process of airport screening may not avoid the search by asking to leave.[33] Noting that air travel is a privilege, the Fourth Circuit has reasoned that it may be conditioned upon irrevocable consent to a search.[34] In balancing the government's interest in disallowing revocation of consent, courts have placed special focus on the statutory scheme and purpose, noting that allowing an individual to leave after the individual has reached the point of embarkation "greatly damages the prophylactic purpose of the search procedure."[35] Importantly, "the very fact that a safe exit is available … would, by diminishing the risks, encourage attempts."[36] Courts have recognized the necessity for restricting the right to revoke consent after this crucial point, noting that the problem with allowing a "safe exit" is that "established search procedures are perhaps more valuable by what they discourage than what they discover."[37]

The majority notes that since the events of September 11, federal circuit courts have overruled prior cases that predicated the reasonableness of airport screening on irrevocable implied consent and determined that the Fourth

---

[32] *See Herzbrun*, 723 F.2d at 775.

[33] *See id.*

[34] *Haynie*, 637 F.2d at 230.

[35] *See U.S. v. Skipworth*, 482 F.2d 1272, 1277, 1281 (5th Cir. 1973) (Aldrich, dissenting) (the majority agreed with this part of the dissenting opinion, holding Skipworth's "right-to-leave" argument lacked merit).

[36] *Id.*

[37] *See id.*

Amendment requires even less protection of the individual in dangerous contexts.[38] Indeed, the majority cites cases holding that today airport searches are administrative and no consent is needed at all.[39] The majority argues that it is unpersuasive to attempt to justify a rule of irrevocable consent by comparing a warrantless blood draw to an administrative search. But, the danger factor that has driven courts to conclude administrative searches are reasonable in the context of perilous and high-risk circumstances only further supports the position that preventing a DWI Repeat Offender from revoking consent to a blood draw is also reasonable under the Fourth Amendment. Though administrative searches have no requirement of consent or individualized suspicion, section 724.012(b)(3)(B) requires an officer to have made a valid arrest of a DWI Repeat Offender before the officer obtains a blood draw. If administrative searches at airports are reasonable under the Fourth Amendment, then it is also reasonable to enforce this particular provision of the implied-consent statute in the narrow context of DWI Repeat Offenders exercising the privilege of driving on public roadways.

Today's case is similar to the special cases involving criminal recidivism and zones of danger. Yet, it presents a unique circumstance requiring review of a search in the multi-faceted context of (1) a recidivist (2) who has engaged in dangerous conduct on the roadways, (3) consented to a narrow search (blood draw or breath specimen in the event of another DWI arrest) in exchange for the privilege of being allowed to drive in spite of that past dangerous conduct, (4) accepted the benefits of the conditioned privilege by driving on a public roadway, and (5) is arrested for engaging in the same highly dangerous conduct again.

---

[38] *See* maj. op. at ___.

[39] *See George v. Rehiel*, 738 F.3d 562, 575 (3d Cir. 2013); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 10 (D.C. Cir. 2011); *United States v. Aukai*, 497 F.3d 955, 960-61 (9th Cir. 2007) (en banc).

9

Confronted with this extraordinary public endangerment and the critical need to deter the fatal activity, the Texas Legislature enacted a series of laws,[40] specifically focusing its efforts on the severe threat posed by recidivists who fail to observe the prohibition against drunk driving even after being convicted of the offense at least twice before. Because this class of offenders represents a particular, known, and heightened threat to public safety, the Texas Legislature sought to deter DWI Repeat Offenders from getting behind the wheel and again endangering the public by driving in an impaired state. The legislative solution to the recidivist threat was to provide a framework that conditioned the driving privilege on consent to police officers obtaining blood or breath samples from DWI Repeat Offenders who are suspected of driving while intoxicated and to obtain the samples in the absence of a search warrant.[41] This provision of the statute is narrowly tailored, specific to the search, and is limited in scope, effectively serving the purpose and meeting the requirements of a warrant.[42]

Section 724.012(b)(3)(B) of Texas's implied-consent law creates a compact that is akin to the compact enforced against probationers and parolees. The majority argues that, unlike probationers and parolees, DWI Repeat Offenders do not have conditional liberty interests. But, driving is a privilege, not a right.[43] Just as it is reasonable to enforce the agreements of parolees and probationers that diminish their liberty interests, it is reasonable to enforce agreements of DWI Repeat Offenders to consent to blood draws on condition of exercising driving privileges.

---

[40] *See* Tex. Transp. Code Section 724.001, *et seq*. (West 2014).

[41] *See Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).

[42] *See New York v. Burger*, 482 U.S. 691, 703, 107 S.Ct. 2639, 2644, 96 L.Ed.2d 601 (1987).

[43] *See* Tex. Transp. Code Ann. § 724.035 (West 2014).

In exchange for the privilege of driving on public roads in Texas, the DWI Repeat Offender irrevocably consents to have blood drawn in the event that the DWI Repeat Offender is arrested yet again for driving while intoxicated.[44] Under this compact, the DWI Repeat Offender faces a difficult choice:[45] forego driving a motor vehicle on Texas roadways or consent to a blood draw in the event of another DWI arrest.[46] The latter choice does not include the option of revocation.[47] It is significant that the Texas Legislature did not outright deny the driving privilege to DWI Repeat Offenders, but instead gave these individuals the option of enjoying the privilege subject to the condition. Appellant's acceptance of the benefits of this conditioned privilege supports the irrevocability of his consent. Once appellant, a DWI Repeat Offender, elected the condition attached to the driving privilege by turning the key to start the vehicle's ignition, it was too late to revoke consent. At that point, as a DWI Repeat Offender, appellant had accepted the risk of a blood draw should he be arrested for driving while intoxicated.

If a police officer suspects a DWI Repeat Offender of driving while intoxicated, the officer shall arrange for a statutory blood draw or the collection of a breath specimen. Were the DWI Repeat Offender entitled to revoke consent at that point, then the prophylactic purpose of the search procedure prescribed by the Texas statute would be frustrated.[48] Likewise, the deterrent effect of the statutory scheme would be thwarted as the DWI Repeat Offender would be able to revoke consent for the blood draw even after accepting the conditioned privilege of

---

[44] *See* Tex. Transp. Code Ann. §§ 724.011; 724.012.

[45] *See McGautha v. California*, 402 U.S. 183, 213 (1971).

[46] Tex. Transp. Code § 724.011.

[47] *See generally*, *id.* at § 724.011, *et seq.*

[48] *See Skipworth*, 482 F.2d at 1281.

11

driving. The State of Texas is not required to ignore either the grave public danger of drunk driving or the reality of recidivism in DWI Repeat Offenders.

The majority concludes that the DWI Repeat Offender can revoke consent after being arrested for another DWI offense. According to the majority, reasonableness requires the State to allow the DWI Repeat Offender's revocation. Rather than examine the search in the context of the State's keen interest in curbing fatal recidivist activity and regulating that activity within a recognized danger zone for the purpose of protecting the public from threat of death or injury, the majority relies on cases in home-search contexts that have little application to the circumstances presented by today's case.[49]

In the context of drunk driving and DWI Repeat Offenders, reasonableness does not dictate that revocation of consent is always an option, as the majority concludes. It is not an option in the context of air piracy, where the State has an interest in thwarting and deterring activity that endangers the public. *Is drunk driving by DWI Repeat Offenders any less risky or dangerous to human life? Does a DWI Repeat Offender on a public roadway create any less of a "zone of danger" than one suspected of air piracy?*

Just as the need to protect the public in the airways makes it reasonable to prevent individuals from revoking their consent to a search before boarding a plane, the need to protect the public on roadways makes it reasonable to prevent DWI Repeat Offenders from revoking consent to a search after being arrested for a new DWI offense. Allowing a DWI Repeat Offender who embarks on a public roadway to revoke consent to a search once arrested for DWI provides the "safe exit" the Supreme Court condemned in the air piracy context.[50] Just as allowing

---

[49] *See* maj. op. at ___.

[50] *See Skipworth*, 482 F.2d at 1281.

revocation in the airways context would frustrate the federal scheme, the "safe exit" the majority creates today undermines Texas's ability to prosecute DWI Repeat Offenders who choose to drive drunk again.

The Texas Legislature has recognized the serious and pervasive threat posed by recidivists and has taken focused action to address it in our state by imposing conditions on DWI Repeat Offenders who, despite their prior DWI convictions, are granted and accept the privilege of driving on Texas roadways. Both this deterrence interest and the reality of recidivism among DWI Repeat Offenders are important factors in determining whether a search is reasonable under the Fourth Amendment.[51]

In holding that the State may not rely upon the DWI Repeat Offender's statutory consent or enforce section 724.012(b)(3)(B) of the implied-consent statute, the majority does not properly account for the crucial public-safety interest at stake in deterring DWI Repeat Offenders from drunk driving as a means of thwarting the extraordinary threat resulting from this deadly recidivist activity. These interests make it reasonable to prevent a DWI Repeat Offender from withdrawing consent to a blood draw upon arrest for another DWI offense.

**Conclusion**

Today's case presents a combination of factors, compelling interests as well as limiting principles, that make the irrevocability of consent to a blood draw under section 724.012(b)(3)(B) reasonable in the context of a DWI Repeat Offender's arrest for a new DWI offense. Though the state's public- safety interest is compelling, even that does not provide the government with a free pass to conduct

---

[51] *See Knights*, 534 U.S. at 116, 122 S.Ct. at 590, *Samson*, 547 U.S. at 850, 126 S.Ct. at 2198; *See Skipworth*, 482 F.2d at 1277, 1281.

indiscriminate blood draws. There must be limiting principles for the irrevocable statutory consent to be reasonable and thus pass muster under the Fourth Amendment. The rationale for the rule of irrevocability in this limited circumstance is grounded on built-in statutory boundaries and restrictions that operate as a check on police power and a strong safeguard against unwarranted government intrusion. Summarized below, these boundaries, sewn into the fabric of the statute, provide the necessary measure of protection that makes the irrevocability of consent under subsection (b)(3)(B) reasonable in this narrow context.

- The search is authorized only after police have made a **valid arrest** based on **probable cause** of a **repeat offender** in the **danger zone.**

- The statutory provision implying consent and authorizing the search effectively functions like a warrant, tightly restricting the scope of the search by naming the single place to be searched and specifically identifying the single thing to be seized.[52]

- The irrevocability of consent is based upon the DWI Repeat Offender's voluntary choice to exercise, and accept the benefits of, a privilege (driving) granted by the State on condition of consent to the search.

These limiting principles, coupled with the government's compelling interests in protecting the public from the heightened risk of death or injury from recidivist drunk drivers, make it reasonable to prevent a DWI Repeat Offender arrested for drunk driving from revoking consent to a statutory blood draw.[53]

---

[52] *See Maryland v. King*, 133 S.Ct. 1958, 1970, 186 L.Ed.2d 1 (2013) (noting that limits of police officer's discretion weigh in favor of constitutionality of search); *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 622–25, 109 S.Ct. 1402, 1416–17 (1989) (noting that imposing a warrant requirement would add little assurance of certainty and regularity not already afforded by regulations).

[53] *See Bailey v. U.S.*, ___ U.S. ____,133 S.Ct. 1031, 1040, 185 L.Ed.2d 19 (2013) (noting the importance of limiting principles).

Notably, the First Court of Appeals has concluded that "the warrantless taking of appellant's blood sample in compliance with Transportation Code section 724.012(b) did not violate [the defendant's] Fourth Amendment rights by requiring him to submit to a warrantless blood test without his consent." [54] Though several other sister courts of appeals have determined that consent under the implied-consent statute is either invalid or revocable,[55] none of them addressed the public dangers associated with allowing revocation. None of them considered the State's strong deterrence interest or the conditional nature of the driving privilege granted to DWI Repeat Offenders. None of them accounted for the reality of recidivism among DWI Repeat Offenders. And, none of them considered the built-in statutory checks and other important limiting principles at work in this special circumstance.

This court should affirm rather than reverse the trial court's judgment denying appellant's motion to suppress the evidence obtained as a result of the blood draw. Because it does not, I respectfully dissent.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost, Justices Donovan and Brown. (Brown, J., majority).

Publish—TEX. R. APP. P. 47.2(b)

---

[54] *Perez v. State*, No. —S.W.3d—, 2014 WL 943126, at *7 (Tex. App.—Houston [1st Dist.] Mar. 11, 2014, no pet.).

[55] *See Weems v. State*, 434 S.W.3d 655, 659–64 (Tex. App.—San Antonio 2014 pet. granted); *Reeder v. State*, 428 S.W.3d 924, 929 (Tex. App.—Texarkana 2014, pet. granted); *State v. Villarreal*, —S.W.3d—, No. 13-13-00253-CR, 2014 WL 1257150, at *10 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted); *State v. Sutherland*, 436 S.W.3d 28, 39-41 (Tex. App.—Amarillo 2014, pet. filed); *State v. Anderson*, —S.W.3d—, No. 09-13-00400-CR, 2014 WL 5033262, at *8-11 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.).