

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00075-CR

RUTH PIN ROGMAD                                                            APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

## FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
## TRIAL COURT NO. CR12-0294

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Ruth Pin Rogmad of possession of between four ounces and five pounds of marijuana and assessed her punishment at two years' confinement in state jail and a $10,000 fine. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(3) (West 2010). In two points, Rogmad argues that

---

[1]*See* Tex. R. App. P. 47.4.

the trial court erred by denying her motion to suppress evidence and her motion for new trial. We will affirm.

## II. BACKGROUND

On April 25, 2012, law enforcement authorities in Parker County had information that someone was going to drive from a residence to a convenience store to deliver marijuana. Officer Hamilton located the suspect vehicle and initiated a traffic stop after the vehicle failed to come to a complete stop at a stop sign. Pierre Jones, the driver and sole occupant of the vehicle, drove into a storage building facility before stopping. Officer Negrete quickly arrived to assist Officer Hamilton, who smelled the odor of burnt marijuana emanating from Jones's vehicle and asked him for consent to search the vehicle. Jones consented, and Officer Hamilton located a plastic bag in the vehicle's trunk that contained marijuana residue.

Jones told the officers that he was there to put some vehicle parts in his girlfriend's storage unit, so Officer Negrete asked if Jones had a key to the unit. Jones did have a key; Officer Negrete used it to unlock one of the units, but he did not open the unit. Officer Hamilton asked Jones for his consent to search the storage unit, and Jones gave it. Officer Negrete opened the unit and observed "miscellaneous items" inside, including a small safe. Officer Hamilton asked Jones if he had a key to the safe, and Jones said that he did not. Officer Hamilton, however, located a set of keys in the vehicle's center console that appeared to have a safe key on it and handed them to Officer Negrete. Officer

2

Negrete used the key to open the safe and observed multiple plastic baggies containing marijuana inside. Officer Negrete immediately turned to Hamilton and nodded, indicating that he had discovered illegal narcotics. At that point—after Officer Negrete had opened the safe and stood back up—Jones said, "I didn't say you could look in there." Officer Hamilton replied, "I asked you for consent, you gave us consent, and I have it recorded on my in-car video." The officers arrested Jones for possession of marijuana.

While Jones was in jail, he and Rogmad had several telephone conversations that were recorded, during which Rogmad made incriminating statements about the marijuana that was discovered in the safe, and which ultimately led to her arrest and this prosecution.[2] Rogmad moved to suppress the marijuana found in the safe, but the trial court denied the motion. A jury ultimately convicted Rogmad of the charged offense, and this appeal followed.

### III. MOTION TO SUPPRESS

Specifically invoking the protection of the Texas constitution, Rogmad argues in her first point that the trial court erred by denying her motion to suppress because Jones withdrew his consent for the warrantless search "as soon as [he] realized a law enforcement officer had taken his keys and unlocked the safe." Rogmad does not argue that Jones did not consent to a search of the storage unit or the safe, that the scope of the consent that Jones gave to search

---

[2]Jones had also told Officer Hamilton during an interview that the vehicle, the storage unit, and the keys belonged to Rogmad.

3

the storage unit did not include the safe, or that Jones lacked the authority to consent to a search of the storage unit or the safe. Rogmad contends only "that Mr. Jones' statement that he did not possess a key to the safe (a remark made prior to entry into the safe), coupled with his statements 'No, No, No,' as the officers entered the safe, should constitute *withdrawal* of consent to search, at least to the contents of the safe." [Emphasis added.] The State responds that the contraband was seized during a valid consensual search prior to any alleged withdrawal of consent. We agree with the State.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.). Consent to search is one of the well-

4

established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). But when a person voluntarily consents to a search, the officer's authority to perform the search is not without limit. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996), *overruled on other grounds by Guzman*, 955 S.W.2d at 85. A person may revoke the consent that he has given to search. *See Florida v. Jimeno*, 500 U.S. 248, 252, 111 S. Ct. 1801, 1804 (1991). If a person withdraws his consent before a search is completed, the police cannot continue searching based on the prior consent. *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977). However, when "a suspect does not withdraw his valid consent to a search for illegal substances before they are discovered, the consent remains valid and the substances are admissible as evidence." *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir. 1986). The State bears the burden to show valid consent by clear and convincing evidence. *Best*, 118 S.W.3d at 862.

Officer Hamilton testified at the motion to suppress hearing and at trial that Jones did not withdraw his consent to search the storage unit or the safe before Officer Negrete opened the safe and discovered the marijuana inside. The following exchange occurred at the suppression hearing:

> [State]: Deputy Hamilton, as you, Investigator Negrete, and Mr. Jones were standing outside this closed storage unit, did Mr. Jones indicate to you his consent denial?
>
> [Officer Hamilton]: I'm sorry?
>
> [State]: Denial of consent?

5

[Officer Hamilton]:  No, he never did --

[State]:  Okay.

[Officer Hamilton]:  -- deny consent.

[State]: What about . . . when Investigator Negrete got the key to the storage unit, did Mr. Jones object?

[Officer Hamilton]:  No.

[State]: What about when the storage unit was actually unlocked and the door opened, did Mr. Jones object?

[Officer Hamilton]:  No, ma'am.

[State]: Was he present in a situation that he could have objected and y'all all could have heard it?

[Officer Hamilton]:  Yes, ma'am.

[State]: When Investigator Negrete opened the storage unit and presumably looked around at least briefly, did Mr. Jones object?

[Officer Hamilton]:  No, ma'am.

[State]: When . . . Investigator Negrete retrieved the key to the locked box of the safe, did Mr. Jones object?

[Officer Hamilton]:  No, ma'am.

[State]:  As Investigator Negrete was bending down to unlock the safe that was on the lower part of the storage unit, did Mr. Jones object?

[Officer Hamilton]:  No, ma'am.

[State]:  As the safe was unlocked -- actually being unlocked, did Mr. Jones object?

[Officer Hamilton]:  No ma'am.

6

[State]: And, actually, did he ever withdraw his consent?

[Officer Hamilton]: No, ma'am, he did not.

Officer Negrete testified similarly:

[State]: Okay. But at any rate, you ended up with a key that you believed was going to unlock the safe?

[Officer Negrete]: Yes, ma'am.

[State]: And at this time Mr. Jones was handcuffed?

[Officer Negrete]: Yes, ma'am.

[State]: So he didn't hand you the key, did he?

[Officer Negrete]: No, ma'am.

[State]: Okay. But at the same time, Mr. Jones was there, and did he object to you, number one, getting the key from Deputy Hamilton?

[Officer Negrete]: No, ma'am.

[State]: Did he object to you taking the key and walking over to the safe?

[Officer Negrete]: No, ma'am.

[State]: Did he object to you bending down and sort of addressing or fronting the safe?

[Officer Negrete]: No, ma'am.

[State]: Did he object to you as you were opening the safe?

[Officer Negrete]: No, ma'am.

[State]: What did you see when you opened the safe?

[Officer Negrete]: When I opened the safe, I saw multiple plastic baggies containing marijuana.

7

Rogmad argues that Jones effectively withdrew his consent to search the safe when he told the officers that he did not have a key to the safe, but that statement accomplished no such thing; Jones merely advised the officers that he did not possess a particular item. Rogmad argues that Jones withdrew his consent *as* Officer Negrete opened the safe, but the record reveals that Jones did not withdraw his consent until *after* Officer Negrete had opened the safe and had discovered the marijuana. At that point, the withdrawal came too late, at least as to the admissibility of the marijuana at trial. *See Dyer*, 784 F.2d at 816. We hold that the trial court did not err by denying Rogmad's motion to suppress. *See Best*, 118 S.W.3d at 862. Accordingly, we overrule her first point.

## IV. MOTION FOR NEW TRIAL

In her second point, Rogmad argues that the trial court erred by denying her motion for new trial because she was shackled during the first day of trial without the required showing of manifest need.

We review a trial judge's denial of a motion for new trial for an abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

The trial court has discretion to order restraints if there is a showing of manifest need or exceptional circumstances. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992). However,

8

Texas courts have consistently held that no harm results from restraining a defendant when the restraints were not visible.  *See Bell v.* State, 415 S.W.3d 278, 281–83 (Tex. Crim. App. 2013), *cert. denied*, 134 S. Ct. 1788 (2014); *Canales v. State*, 98 S.W.3d 690, 697–98 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003); *Long*, 823 S.W.2d at 283.

The trial court did not order Rogmad to be shackled, nor did Rogmad's own attorney, the prosecutors for the State, or the trial court even notice that Rogmad was shackled on the first day of trial.  The issue was first brought to the attention of the trial court in Rogmad's motion for new trial.  According to the motion, the paralegal for Rogmad's attorney notified Rogmad's attorney after trial that Rogmad had been shackled on the first day of trial.  Rogmad admits that she was shackled because "the bailiff in charge was new to court and not acquainted with proper courtroom procedure."  There was no evidence at the hearing on Rogmad's motion for new trial that any members of the jury perceived that Rogmad was shackled, nor was there any evidence that the shackles interfered with Rogmad's ability to communicate with her attorney or somehow diminished the dignity of the judicial process.  *See Deck v. Missouri*, 544 U.S. 622, 630–31, 125 S. Ct. 2007, 2013 (2005) (discussing three fundamental legal principles affected when defendant is shackled during trial).  Therefore, we hold that the trial court did not abuse its discretion by denying Rogmad's motion for new trial.  *See Bell*, 415 S.W.3d at 282 (reasoning that relevant court of criminal appeals cases "demonstrate an appropriate unwillingness to make the factual assumption

9

that the jury perceived a defendant's shackles in the absence of any record support"). We overrule her second point.

## V. CONCLUSION

Having overruled both of Rogmad's points, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 14, 2015