**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WADE ROBERTSON,
            *Petitioner-Appellant*,

v.

RISE JONES PICHON, Judge of
Santa Clara Superior Court;
ATTORNEY GENERAL OF THE
STATE OF CALIFORNIA,
            *Respondents-Appellees.*

No. 15-16463

D.C. No.
5:10-cv-05027-EJD

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward J. Davila, District Judge, Presiding

Argued and Submitted October 18, 2016
San Francisco, California

Filed March 2, 2017

Before: Sidney R. Thomas, Chief Judge, and Carlos T. Bea
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Chief Judge Thomas

## SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's denial of Wade Robertson's habeas corpus petition challenging his California state conviction for driving under the influence of alcohol and possession of a billy club.

Robertson contends that he was under arrest at the time a police officer asked him to take a chemical test, that he was therefore in custody at the time he unambiguously invoked his right to counsel, and that the state court's failure to suppress his statements regarding the billy club during subsequent questioning violated his Fifth Amendment rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981).

The panel held that because the Supreme Court has not addressed whether a defendant's request for counsel in response to a request to submit to a chemical test constitutes an invocation of his *Miranda* rights for purposes of any future custodial interrogations, the state court's ruling that the admission of Robertson's statements did not violate *Miranda* and *Edwards* is not objectively unreasonable.

Chief Judge Thomas concurred. He agreed that the district court should be affirmed given the AEDPA standard of review, but wrote that if the appeal were on direct review, one might reach a different conclusion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Marc J. Zilversmit (argued), San Francisco, California, for Petitioner-Appellant.

Jill M. Thayer (argued), Deputy Attorney General; Peggy S. Ruffra, Supervising Deputy Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Office of the Attorney General, San Francisco, California; for Respondents-Appellees.

**OPINION**

IKUTA, Circuit Judge:

Wade Robertson was found guilty by a California state jury of driving under the influence of alcohol and possession of a billy club and was sentenced to 12 days in jail and three years on probation. Robertson appeals the district court's denial of his petition for a writ of habeas corpus.[1] We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

I

The evening of April 27, 2006, Wade Robertson, was celebrating with four others at Nola's Restaurant in Palo Alto, California. The group ordered 24 shots of liquor and six mixed drinks over the course of four hours. In addition, Robertson paid for a separate round of drinks with a $100 bill, and according to the waitress, told her to keep the change.

Shortly after midnight, Robertson complained to the manager on duty, Shiraz Qadri, that the waitress had failed to return the change for the $100 bill. In order to avoid problems, Qadri reduced Robertson's credit card bill by $90. Qadri testified that throughout this interaction, Robertson

---

[1] We have jurisdiction over Robertson's appeal because he filed his petition while he was on probation. Probationary status qualifies as being "in custody" for jurisdictional purposes, and a petitioner's "subsequent release from custody does not deprive the court of its jurisdiction." *Chaker v. Crogan*, 428 F.3d 1215, 1219 (9th Cir. 2005). Further, because Robertson is presumed to experience collateral consequences as a result of his convictions, the case is not moot. *See id.*

appeared intoxicated, with "dilated eyes, red face, red eyes" and with alcohol on his breath. Qadri offered to call Robertson's group a cab. Robertson declined.

After Robertson left the restaurant, Qadri saw him walk over to a white pickup truck. Agent Dan Ryan, a Palo Alto police officer on patrol that evening, also saw Robertson standing outside a parked pickup truck on the street near the restaurant. As Robertson prepared to take off in the truck, Qadri flagged down Agent Ryan and told him, "Hey, those guys told me they were going to take a cab and they have been drinking pretty heavily."

Not long afterward, Agent Ryan saw the white truck make an illegal left turn a few blocks away from the restaurant, cutting off another vehicle. Agent Ryan followed the truck, caught up to it when the driver pulled into a gas station, and initiated a traffic stop. Robertson quickly exited the truck and began walking towards the patrol vehicle. Once Robertson got out of the truck, Agent Ryan recognized him from the prior encounter. Agent Ryan recalled that Robertson "had an odor of an alcoholic beverage on his breath." According to Agent Ryan, Robertson loudly and aggressively asked him why he had been stopped, and denied that he had been drinking. When Agent Ryan pointed out the smell of alcohol on his breath, Robertson called him a liar.

At that point two additional officers, David Guy and Cole Ghilarducci, arrived at the scene, and observed Agent Ryan administering a series of field sobriety tests. Robertson

performed poorly: the nystagmus gaze test[2] indicated the presence of blood alcohol, and he displayed poor coordination and balance. Based on the field sobriety tests and Robertson's demeanor, Agent Ryan concluded that Robertson had been driving under the influence of alcohol. Officer Guy testified that he reached the same conclusion, and that it was not a close call. When Officer Guy looked into the white truck, he saw a billy club lying between the driver and passenger seats. He collected the billy club for evidence.

Agent Ryan arrested Robertson and took him to the police department's booking area. When Agent Ryan asked Robertson to take a breath test, he refused. He also refused to take a blood test. At that point, Agent Ryan gave Robertson a form issued by the California Department of Motor Vehicles, which provided the following information, among other things:

> 1. You are required by state law to submit to a chemical test to determine the alcohol and/or drug content of your blood.
>
> 2. a. Because I believe you are under the influence of alcohol, you have a choice of taking a breath or blood test. . . .

---

[2] According to the testimony, when administering a nystagmus gaze test, an officer asks a person to track a finger or a pen using only his eyes, without moving his head. Nystagmus is present when the iris of the eye has a jerky or skipping movement as it moves left and right and suggests, in most individuals, the presence of alcohol in the bloodstream.

4. Refusal or failure to complete a test may be used against you in court. Refusal or failure to complete a test will also result in a fine and imprisonment if this arrest results in a conviction of driving under the influence.

5. You do not have the right to talk to an attorney or have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the test. . . .

After Robertson read the form, he told Agent Ryan that he wanted to speak with his attorney before submitting to any chemical test. Pointing to section 5 of the form (which actually stated he did *not* have the right to an attorney), Robertson said "See, I have the right to an attorney right here, and I want my attorney." Agent Ryan tried to correct this misreading of section 5, but when Agent Ryan asked Robertson again to take a breath test, Robertson replied, "Absolutely not," and in response to the request to take a blood test, Robertson replied, "No, I will not take a blood test."

At some point during the booking process, Agent Ryan gave Robertson *Miranda* warnings. After reading Robertson his rights, Agent Ryan asked Robertson if the billy club that Officer Guy found in Robertson's truck belonged to him. Robertson said, "[Y]es, it belonged in the truck." He then asked "if it was a misdemeanor to possess that in California?" Agent Ryan told him it "could be charged either as a misdemeanor or a felony," and gave Robertson a copy of the California Penal Code so he could read the law for himself. Agent Ryan also administered a second series of field

sobriety tests in the booking area. These tests, which were recorded on videotape, showed that Robertson again performed poorly.

Robertson was subsequently charged with two criminal counts. First, he was charged with misdemeanor driving under the influence of alcohol in violation of section 23152(a) of the California Vehicle Code,[3] along with an enhancement for refusing to submit to a chemical test as provided under section 23577 of the Vehicle Code (referred to here as a "refusal enhancement").[4] Second, he was charged with

---

[3] At the time of the offense, section 23152(a) of the California Vehicle Code provided:

> (a) It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle.

[4] Section 23577 of the California Vehicle Code imposes various penalties on any person convicted of a violation of Section 23152 or 23153 if "at the time of the arrest leading to that conviction that person willfully refused a peace officer's request to submit to, or willfully failed to complete, the chemical test or tests pursuant to Section 23612."

In turn, section 23612 of the California Vehicle Code provides, in pertinent part:

> (a)(1)(A) A person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for an offense allegedly committed in violation of Section 23140, 23152, or 23153. If a blood or breath test, or both, are unavailable, then paragraph (2) of subdivision (d) applies. . . .

misdemeanor possession of a billy club in violation of section 12020(a)(1) of the California Penal Code.[5]

Robertson filed a pretrial motion to suppress evidence obtained during the traffic stop. Robertson argued that Agent Ryan had not been directly behind Robertson's truck. From this fact, Robertson argued, it could be inferred that Agent Ryan had not observed the illegal left turn and therefore, the traffic stop was unlawful. To support this theory, two expert witnesses testified that bank surveillance photographs of the intersection where Robertson made the illegal left turn showed that Agent Ryan's police car was not immediately behind Robertson's truck. Robertson also called two eyewitnesses to testify that Agent Ryan's police car was not behind his truck. The trial court denied the motion to suppress. It stated that it did not credit the testimony of the eyewitnesses, but did credit Agent Ryan's testimony that he personally observed Robertson's illegal left turn.

---

(C) The testing shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in violation of Section 23140, 23152, or 23153.

[5] At the time of the offense, section 12020(a)(1) of the California Penal Code provided, in pertinent part:

(a) Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison: (1) Manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any . . . instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag.

Robertson subsequently filed a motion in limine to admit into evidence the bank surveillance photographs and related expert testimony at trial. The trial court denied the motion, stating that the legality of the traffic stop had already been fully litigated, but that it would allow Robertson to renew his motion at trial to use the evidence to challenge Agent Ryan's credibility.

At trial, Agent Ryan testified regarding the traffic stop, the field sobriety tests conducted at the scene, and the events in the booking area in the police department. He also testified that the billy club was similar to batons used by the Palo Alto police department. Robertson's trial counsel did not object to the admission of these statements.

For the defense, Robertson's counsel introduced eyewitness testimony that Robertson had not been drinking the night of April 27 and that he was not drunk when he left the restaurant. A field sobriety expert testified that Agent Ryan had improperly administered several of the field sobriety tests. Robertson contended that the smell of his breath was attributable to hypoglycemia. A licensed private investigator testified that the billy club had nonviolent uses such as checking tire pressure and serving as a handle for a tire jack. Robertson attempted again to introduce the bank surveillance photos to impeach Agent Ryan's credibility, but the court did not permit it, on the ground "that the probative value is substantially outweighed by the undue consumption of time."

At the close of evidence, Robertson moved for a judgment of acquittal on the charge of possessing a billy club in violation of section 12020(a)(1) on the ground that the evidence was insufficient to establish that Robertson knew

that the billy club was a weapon or could be used as a weapon. The trial court denied the motion, holding that the evidence that Robertson had asked Agent Ryan whether possession of the billy club was a misdemeanor showed that Robertson knew the billy club was a weapon.

In closing argument, the prosecutor criticized Robertson's theory of the case, arguing:

> Ladies and gentlemen, to find reasonable doubt in this case you got to believe Shiraz Qadri lied about a complete stranger; Agent Ryan lied about a complete stranger that night; Officer Guy lied about a complete stranger that night; that defendant just can't follow instructions, that he just has horrible balance, despite being a wrestler which requires great balance. He lies about alcohol for absolutely no reason. He had some good reason not to blow besides guilt, and he was willing to take the consequences for some reason besides being guilty.

The trial court then charged the jury. With respect to the refusal enhancement under section 23577 of the California Vehicle Code, the court provided the following instruction:

> If you find the defendant guilty of driving under the influence of alcohol, you must then decide whether the People have proved the additional allegation that the defendant willfully refused to submit to a chemical test to determine blood alcohol content.

> To prove this allegation the People must prove that:
>
>> 1. A peace officer asked the defendant to submit to a chemical test to determine blood alcohol content;
>>
>> 2. The peace officer fully advised the defendant of the requirement to submit to a test and the consequences of not submitting to a test;
>>
>> AND
>>
>> 3. The defendant willfully refused to submit to a test.

The court did not instruct the jury that it was required to find that Robertson had been lawfully arrested.

The jury found Robertson guilty of driving under the influence and of willfully refusing to submit to a chemical test to determine blood alcohol content. It also convicted Robertson of possession of a billy club. Robertson brought a motion for a new trial, alleging (among other arguments) that the admission of his statement that he knew the billy club was in the truck, and his question whether possession was illegal, violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The trial court denied the motion.

On appeal to the Appellate Division of the Santa Clara County Superior Court, Robertson argued that once he invoked his right to counsel, Agent Ryan's continued questioning violated his rights under *Edwards v. Arizona*,

451 U.S. 477 (1981), and therefore Robertson's statements about the billy club were inadmissible. The Appellate Division rejected this argument, saying only "Appellant's statements did not violate *Miranda*."**[6]** The California Court of Appeal summarily denied Robertson's request to consider this and other claims, and the California Supreme Court summarily denied his petition for a writ of state habeas corpus.

Robertson filed a petition for a writ of habeas corpus in federal district court in November 2010. The district court denied the petition, but granted a certificate of appealability limited to Robertson's claim that the trial court's admission of his statements regarding the billy club violated *Edwards*.

## II

"We review de novo the district court's denial of a § 2254 habeas petition." *Murdoch v. Castro*, 609 F.3d 983, 989 (9th Cir. 2010) (en banc) (plurality opinion). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petition for habeas corpus pending before a federal court "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" resulted in a decision that either "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

---

**[6]** The Appellate Division also denied Robertson's subsequent application to certify the case for decision by the California Court of Appeal.

determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

"The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)). Clearly established federal law is limited to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions," *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)), and "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced,'" *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (quoting *Marshall*, 133 S. Ct. at 1450). "[W]hen a Supreme Court decision does not 'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in these recent decisions, it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue before us, and so we must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009) (second, third, and fourth alterations in original) (citation omitted) (quoting *Wright v. Van Patten*, 552 U.S. 120, 125 (2008)). Said otherwise, "when a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case." *Murdoch*, 609 F.3d at 991.

Where there is clearly established Supreme Court precedent on point, we may not hold a state court's application of that precedent to be unreasonable unless it is

"'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002) (per curiam). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Said otherwise, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103). "AEDPA's requirements reflect a 'presumption that state courts know and follow the law,'" *Donald*, 135 S. Ct. at 1376 (quoting *Visciotti*, 537 U.S. at 24), and its "highly deferential standard for evaluating state-court rulings . . . demands that state-court decisions be given the benefit of the doubt," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Visciotti*, 537 U.S. at 24).

## III

On appeal, Robertson claims that the state trial court's failure to suppress his statements regarding the billy club after Robertson stated "I want my attorney" violated his Fifth Amendment rights under the principles set forth in *Edwards*, 451 U.S. 477. Robertson contends that he was under arrest at the time Agent Ryan asked him to take a chemical test and was therefore in custody at the time he unambiguously

invoked his right to counsel. Accordingly, Robertson argues, Agent Ryan's subsequent questioning before counsel was made available was directly contrary to *Edwards*, and accordingly, the Appellate Division's rejection of this claim was an unreasonable application of *Edwards*.

## A

To evaluate this claim, we begin with a review of *Edwards* and other relevant Supreme Court precedent.

In *Edwards*, a defendant was arrested for robbery, burglary, and first-degree murder, and was informed of his rights at the police station as required by *Miranda*. 451 U.S. at 478. After some preliminary negotiations with the police about a plea bargain, the defendant said, "I want an attorney before making a deal." *Id.* at 479. The police stopped questioning the defendant, but renewed interrogation the next day. *Id.* In response to this interrogation, the defendant ultimately confessed. *Id.* The state courts refused to suppress his confession. *Id.* at 480.

The Supreme Court reversed. *Id.* As *Edwards* explained, *Miranda* "determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." 451 U.S. at 481–82 (citing *Miranda*, 384 U.S. at 479). *Edwards* concluded that "additional safeguards are necessary when the accused asks for counsel." *Id.* at 484. Therefore, *Edwards* adopted the prophylactic rule "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right

cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* When "an accused . . . having expressed his desire to deal with the police only through counsel," he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85. Because the defendant in *Edwards* had invoked his Fifth Amendment right to counsel under *Miranda*, and that right had been infringed by the police returning to ask him more questions, the Court held that "the fruits of the interrogation initiated by the police" could not be used against him. *Id.* at 485.

The Supreme Court has indicated that there are limits on a defendant's rights under *Miranda* and *Edwards*. First, "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect is subjected to interrogation," *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980), and *Edwards* reiterated that "[t]he Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation," 451 U.S. at 485–86. "Absent such interrogation, there would have been no infringement of the right." *Id.* Accordingly, any statements sought to be suppressed must have been the product of interrogation.

The term "interrogation" has a specific meaning in this context. The Court has clarified that not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." *Innis*, 446 U.S. at 299. Rather, "*Miranda* safeguards come into play whenever a person in custody is subjected to either

express questioning or its functional equivalent." *Id.* at 300–01. "'[I]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300.

The Supreme Court has previously explained how *Miranda* and *Edwards* apply to police requests that a suspected drunk driver submit to chemical testing. In *South Dakota v. Neville*, police stopped a suspected drunk driver, who refused to take a blood-alcohol test. 459 U.S. 553, 555 (1983). The defendant "sought to suppress all evidence of his refusal to take the blood-alcohol test," and the state court granted the suppression motion. *Id.* at 556. The Supreme Court reversed, holding that *Edwards*'s prophylactic rule was not implicated under these circumstances because "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*." *Id.* at 564 n.15; *see also Pennsylvania v. Muniz*, 496 U.S. 582, 604 (1990) (holding that a defendant's incriminating utterances during the administration of three physical sobriety tests and a breath test for blood-alcohol content at the police station were not in response to custodial interrogation, and that therefore the absence of *Miranda* warnings did not require suppression of the statements at trial).[7]

The Court has noted a second limitation of *Edwards*'s prophylactic rule. *McNeil v. Wisconsin* held that a

---

[7] In *Birchfield v. North Dakota*, the Supreme Court held that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." 136 S. Ct. 2160, 2185 (2016). Because Robertson refused to submit to a breath test and refused to submit to a blood test, *Birchfield* does not affect our analysis.

defendant's invocation of the Sixth Amendment right to counsel at his initial appearance before a court was specific to the type of legal assistance required and to the specific crime for which the defendant had invoked the right to counsel. 501 U.S. 171, 178 (1991). The invocation of a Sixth Amendment right as to one crime did not count as an invocation of the *Miranda-Edwards* right to respond to custodial interrogation only through counsel with respect to a different crime. *Id.* Rather, *Edwards* "applies only when the suspect ha[s] expressed his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*," meaning that the defendant must make "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *Id.* (quoting *Edwards*, 451 U.S. at 484) (internal quotation marks and emphasis omitted). The Court rejected the argument that a defendant could get around the rule that the right to counsel is specific to the circumstances by invoking *Miranda* and *Edwards* at a pretrial hearing, stating that "we have . . . never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'" *McNeil*, 501 U.S. at 182 n.3. In other words, "[t]he fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect." *Id.*

In *Bobby v. Dixon*, the Supreme Court considered *McNeil*'s limitation on the *Edwards* rule in the habeas

context. 132 S. Ct. 26, 29 (2011) (per curiam).[8] In *Dixon*, the defendant had a "chance encounter" with the police at the local police station, and refused to answer questions about a crime without his lawyer present. *Id.* at 28. After being arrested, interrogated, and released, the defendant returned to the police station and stated that he talked to his attorney, and wanted to confess. *Id.* The state court allowed the murder confession to be admitted into evidence, but the Sixth Circuit granted the defendant's federal habeas petition on the basis that the state court's admission of his confession was an unreasonable application of *Miranda*. *Id.* at 29. The Supreme Court reversed, holding that the Sixth Circuit was "plainly wrong" in holding that *Miranda* clearly established that the defendant's initial refusal to talk to the police without a lawyer required the suppression of the subsequent confession. *Id.* The Court noted that the defendant "was not in custody during his chance encounter with police," and "this Court has 'never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than custodial interrogation.'" *Id.* (quoting *McNeil*, 501 U.S. at 171 n.3).

Reading these cases together, the Supreme Court has made clear that a defendant has a Fifth Amendment right to have counsel present at any custodial interrogation, and once the defendant has invoked this right, the defendant "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself

---

[8] Although "[s]tate-court decisions are measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision,'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)), we are bound by the Supreme Court's AEDPA decisions regardless when the opinion was issued.

initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85. But if a defendant is not in the context of custodial interrogation — such as when a suspected drunk driver is asked by police to submit to chemical testing — the safeguards of *Miranda* and *Edwards* are inapplicable. This limitation of *Edwards*'s prophylactic rule applies even if the defendant had previously invoked *Miranda* and *Edwards* before being placed in a custodial interrogation context.

## B

In light of this analysis of the Supreme Court's clearly established precedent, we must determine whether, under AEDPA's deferential standard, the Appellate Division was objectively unreasonable in determining that Robertson was not entitled to the safeguards of *Miranda* and *Edwards*. We conclude that the state court could have made a principled distinction of these cases on two grounds.

First, although Robertson was under arrest and in custody at the booking station, a state court could have reasonably concluded that Agent Ryan's request that Robertson submit to chemical testing did not constitute custodial interrogation, because such a request "[i]n the context of an arrest for driving while intoxicated" does not constitute "an interrogation within the meaning of *Miranda*." *Neville*, 459 U.S. at 564 n.15; *see also Muniz*, 496 U.S. at 604. Accordingly, a state court could reasonably conclude that Robertson's statement "I want my attorney" was an attempt to "invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'" *McNeil*, 501 U.S. at 182 n.3. Because the Supreme Court has stated that it has never answered the question whether a defendant can make such an

anticipatory invocation, a state court's conclusion that Robertson's anticipatory invocation of his right to counsel did not trigger any rights under *Edwards* could not be an unreasonable application of Supreme Court precedent. *See Donald*, 135 S. Ct. at 1376.

Second, even though a police officer could infer that Robertson's statement that he would not submit to chemical testing without a lawyer meant that Robertson also wanted a lawyer for subsequent questioning, *McNeil* tells us that "the likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards*," 501 U.S. at 178 (emphasis omitted). Rather, the defendant must express "his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*," namely, "an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *Id.* A state court could reasonably conclude that Robertson's invocation of the right to counsel in the context of responding to a request to submit to chemical testing, did not express his desire for the assistance of counsel in dealing with custodial interrogation. Under AEDPA, we must defer to such a determination. *See Dixon*, 132 S. Ct. at 29 (2011).

Robertson argues that such a conclusion is squarely precluded by our decision in *Sessoms v. Grounds*, 776 F.3d 615 (9th Cir. 2015) (en banc). In *Sessoms*, a defendant in police custody was interrogated by two police officers. *Id.* at 617. After the exchange of a few inconsequential remarks, the defendant stated: "There wouldn't be any possible way that I could have a — a lawyer present while we do this? . . . Yeah, that's what my dad asked me to ask you guys . . . uh, give me a lawyer." *Id.* at 617–18 (second alteration in original). Instead of treating this statement as the invocation

of a right to counsel, the police told the defendant that having a lawyer "would only hurt him," and then read him his *Miranda* rights. *Id.* at 619. The defendant waived his *Miranda* rights and confessed to the crime. *Id.* The state court rejected the defendant's claim that police had violated his *Miranda* rights on the ground that the defendant's statements were ambiguous, and therefore it was "not 'sufficiently clear[ ] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *Id.* at 620 (alteration in original) (quoting *People v. Sessoms*, No. C041139, 2004 WL 49720, at *3 (Cal. Ct. App. Jan. 12, 2004)). Accordingly, the state court denied the defendant's suppression motion. *Sessoms* rejected this reasoning. It concluded that the case "involves a custodial interrogation in which the defendant should have been informed of his rights before he could knowingly waive them," *id.* at 621, that the defendant's request for counsel was unambiguous, and that the state court's determination to the contrary was "an unreasonable application of Supreme Court precedent," *id.* at 629.

According to Robertson, *Sessoms* is directly on point. Like the defendant in that case, Robertson contends, he was in custody, and made a request for counsel during his preliminary interactions with Agent Ryan before formal interrogation began (and before he was read his *Miranda* rights). But there is a key difference between his situation and the situation of the defendant in *Sessoms*: *Sessoms* held that the defendant was in the context of a custodial interrogation at the time he invoked his right to counsel. *See id.* at 626. The central issue was the ambiguity of the defendant's request for counsel, not the timing of that request or the purposes for which that request was made. *See id.* at 627–29. In this case, by contrast, the state court could

reasonably conclude that Robertson was not in the context of a custodial interrogation at the time he requested counsel. Because *Sessoms* did not address the question raised by our case, it is inapposite here.**[9]**

In sum, the Supreme Court has not addressed the question whether a defendant's request for counsel in response to a request to submit to a chemical test constitutes an invocation of his *Miranda* rights for purposes of any future custodial interrogations. Therefore, we cannot say that the state court's ruling, that the admission of Robertson's statements regarding the billy club did not violate *Miranda* and *Edwards*, is objectively unreasonable.**[10]** We therefore affirm the district court's denial of Robertson's petition.

---

**[9]** For the same reason, Robertson's reliance on *Jones v. Harrington* does not help him. *See* 829 F.3d 1128, 1141 (9th Cir. 2016) (holding that a state court's determination that a defendant's invocation of the right to remain silent was ambiguous was an unreasonable application of Supreme Court precedent where the defendant was subject to hours of custodial interrogation, and stated "I don't want to talk no more").

**[10]** Our analysis is not affected by *Missouri v. Seibert*, 542 U.S. 600 (2004). Under Justice Kennedy's concurrence, which we have held to be controlling, *see United States v. Williams*, 435 F.3d 1148, 1158 (9th Cir. 2006), "postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps" if "an interrogator uses [a] deliberate, two-step strategy, predicated upon violating *Miranda* during an extended interview," *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring in the judgment). *Seibert* is not implicated here: Robertson makes no allegation that Agent Ryan employed a "deliberate, two-step strategy" in order to circumvent *Miranda*, and Robertson's postwarning statements at issue here, regarding the billy club, do not relate to the substance of statements Robertson made prewarning.

IV

Robertson also raises five uncertified claims. "When a brief includes uncertified issues, we may treat it as a request to expand the scope of the certificate of appealability." *Delgadillo v. Woodford*, 527 F.3d 919, 930 (9th Cir. 2008); *see* Ninth Circuit Rule 22-1(e). Under AEDPA, a certificate of appealability (COA) cannot be issued or expanded unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "We look to the District Court's application of AEDPA to [Robertson's] constitutional claims," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003), and Robertson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" in light of AEDPA, *id.* at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

First, Robertson contends that his trial counsel's failure to object to the admission of his statements regarding the billy club amounted to ineffective assistance of counsel.[11] A petitioner claiming ineffective assistance of counsel must show: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In claiming that his counsel was deficient, Robertson points to his trial counsel's declaration, initially submitted with Robertson's motion for a new trial, stating that counsel did not object to the admission of Robertson's statements about the billy club solely due to his mistaken belief that section

---

[11] In support of this claim, Robertson moved belatedly to file supplemental excerpts of record cited in his reply brief. We deny the motion as moot.

12020(a)(1) of the California Penal Code was a specific intent crime, and the government had not established that Robertson knew having a billy club was a crime. The trial court rejected this contention on the ground that Robertson's trial counsel "may have believed that the objection would have been futile or because it enabled the defendant to present to the jury his statement that he did not know it was against the law to have the baton." The district court rejected this ineffective assistance claim without comment.

No reasonable jurist would find the district court's ruling debatable, because the state court's determination that the counsel could have had strategic reasons for not objecting to admission of Robertson's statements was not an unreasonable application of *Strickland*, which "mandates a 'strong presumption' that counsel acted 'for tactical reasons rather than through sheer neglect.'" *Demirdjian v. Gipson*, 832 F.3d 1060, 1066–67 (9th Cir. 2016) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam)). Trial counsel's post-hoc explanation that his decision was based on a legal error is not dispositive, because *Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110.

Next, Robertson asserts that the Appellate Division's decision that the instructional error was harmless was an unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967). Robertson argued that the trial court's instructions on section 23577 (the enhancement based on his refusal to submit to blood or breath alcohol test) missed an element of the offense (that he had been lawfully arrested) and contended that the trial court's failure to sua sponte instruct the jury on this element violated his rights under *Apprendi v.*

*New Jersey*, 530 U.S. 466 (2000), to have the prosecution prove every element of his offense beyond a reasonable doubt. The Appellate Division held that any instructional error was harmless, stating: "Because the jury found beyond a reasonable doubt that the appellant had driven under the influence of alcohol, the jury found that appellant's arrest was lawful."

The district court's rejection of Robertson's constitutional claim is not debatable. At trial, the state presented overwhelming evidence that Agent Ryan had reasonable cause to believe that Robertson had been driving under the influence of alcohol and could cause bodily harm or property damage, and therefore Robertson's arrest was lawful. *See* Cal. Veh. Code § 40300.5 (providing that "a peace officer may, without a warrant, arrest a person when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage" if "[t]he person may cause injury to himself or herself or damage property unless immediately arrested," among other situations). Even assuming the refusal enhancement contains a lawful-arrest element, the Appellate Division could have reasonably concluded that the trial court's failure to instruct the jury on that element was harmless under *Chapman*. Robertson's appeal to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), is unavailing because "a petitioner 'necessarily cannot satisfy' the *Brecht* requirement of showing that he was 'actually prejudiced' by the state court's error . . . 'if a fairminded jurist could agree with the [state appellate court] that [the alleged error] met the *Chapman* standard of harmlessness.'" *Sifuentes v. Brazelton*, 825 F.3d 506, 535 (9th Cir. 2016) (first alteration in original) (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2199(2015)).

Robertson next argues that the Appellate Division unreasonably applied *Crane v. Kentucky*, 476 U.S. 683 (1986), in determining that the trial court's exclusion of evidence relating to Agent Ryan's credibility did not violate his right to present a complete defense. The trial court had excluded the bank surveillance photographs and related expert testimony that had been previously admitted at the suppression hearing, reasoning "that the probative value is substantially outweighed by the undue consumption of time." *See* Cal. Evid. Code § 352.

We have previously held that a trial court's exercise of discretion to exclude evidence under a rule of evidence that requires balancing probative value against prejudice could not be an unreasonable application of clearly established Supreme Court precedent, because the Court has never addressed the question whether such a rule could violate a defendant's constitutional rights. *See Moses*, 555 F.3d at 758–59. No Supreme Court decision has established such a rule since we reached this conclusion in *Moses.* Therefore, no reasonable jurist could disagree with the district court's conclusion that the state court's rejection of Robertson's *Crane* claim was not contrary to, or an unreasonable application of, clearly established federal law.

Robertson also argues that the Appellate Division's conclusion that there was no showing of prosecutorial misconduct was contrary to *Darden v. Wainwright*, 477 U.S. 168 (1986). Robertson claimed that the prosecutor engaged in misconduct in telling the jury that "to find reasonable doubt in this case you got to believe . . . [that Robertson] had some good reason not to blow besides guilt, and he was willing to take the consequences for some reason besides being guilty." The district court rejected this claim, and no

reasonable jurist could disagree with this conclusion. *Darden* instructs "that a prosecutor's improper comments amount to a constitutional violation if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Deck v. Jenkins*, 814 F.3d 954, 978 (9th Cir. 2014) (quoting *Darden*, 477 U.S. at 181). In making this determination, a court may consider "(1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused." *Tak Sun Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005). Here, the state court could have reasonably found that the trial was not infected with unfairness, given that the prosecutor's comments are best understood as characterizing Robertson's argument rather than misstating the evidence, the trial court instructed jurors to disregard "attorneys' comments on the law" to the extent they conflicted with the court's instructions,, and the evidence against Robertson at trial was overwhelming.[12] *See id.*

Finally, Robertson argues that the Appellate Division's determination that section 12020 of the California Penal Code does not violate the Second Amendment is an unreasonable application of *District of Columbia v. Heller*, 554 U.S. 570 (2008). No reasonable jurist could disagree with the district court's rejection of this argument, given that the Supreme

---

[12] Robertson's reliance on *Miller v. Pate*, 386 U.S. 1 (1967), and *Alcorta v. Texas*, 355 U.S. 28 (1957) (per curiam), is misplaced. No reasonable jurist could disagree that the state court could have drawn a principled distinction between this case on the one hand and *Miller* and *Alcorta* on the other, as both of those cases involved the elicitation of false testimony in the presentation of the prosecution's case rather than a characterization of the defendant's theory of the case in closing arguments. *See Miller*, 386 U.S. at 3–4; *Alcorta*, 355 U.S. at 29–30.

Court has never ruled on whether there is a constitutional right to possess a billy club. *See id.* at 574. Robertson's reliance on *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) (per curiam), fails at the threshold. Neither *McDonald* nor *Caetano* had been issued by the Supreme Court before the Appellate Division affirmed Robertson's convictions on direct appeal in 2009, and therefore neither can constitute "clearly established federal law . . . as of the time of the state court decision," *Hedlund v. Ryan*, 815 F.3d 1233, 1239 (9th Cir. 2016) (quoting *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003)).[13]

**AFFIRMED.**

---

THOMAS, Chief Judge, concurring:

Given the standard of review required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), I concur in the majority opinion. Because the state of the law concerning pre-interrogation assertion of *Miranda* rights is not "clearly established," the state court decision in this case was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254. The Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a

---

[13] Of course, neither *McDonald* nor *Caetano* would aid Robertson even had they been issued before the Appellate Division's decision in 2009, as neither case addressed the constitutional right to possess a billy club. *See McDonald*, 561 U.S. at 750; *Caetano*, 136 S. Ct. at 1027.

context other than 'custodial interrogation.'" *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991). And a suspect's "refusal to take a [lawfully-requested] blood-alcohol test" is neither a coerced act, nor is it "protected by the privilege against self-incrimination." *South Dakota v. Neville*, 459 U.S. 553, 564 (1983).

However, if this appeal were on direct review, one might reach a different conclusion. The defendant anticipatorily asserted his *Miranda* rights while in custody in connection with the police request that he submit to a blood alcohol test. Nevertheless, the police continued the questioning and, at some point, provided a *Miranda* warning. This situation, under Supreme Court jurisprudence, would present a legitimate *Miranda/Edwards* issue on direct review. *See Missouri v. Seibert*, 542 U.S. 600, 613–14 (2004) ("[W]hen *Miranda* warnings are inserted in the midst of coordinated and continuing interrogation, they are likely to mislead and deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.") (quoting *Moran v. Burbine*, 475 U.S. 412, 424 (1986)) (alterations omitted); *Montejo v. Louisiana*, 556 U.S. 778, 794–95 (2009) (explaining that once a defendant has invoked his right to counsel, "not only must the immediate contact end, but 'badgering' by later requests is prohibited") (citing *Miranda v. Arizona*, 384 U.S. 436 (1966); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Minnick v. Mississippi*, 498 U.S. 146 (1990)). But that question is for another day, and it is unnecessary for us to opine on that question here. On AEDPA review, I agree that the district court should be affirmed, and I concur in the majority opinion.