ANN WALSH BRADLEY, J. (dissenting).
¶ 87 A blood draw is a particularly intrusive search. It invades the interior of the human body and implicates interests in human dignity and privacy. Schmerber v. California, 384 U.S. 757, 769-70, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). To allow a blood draw without a warrant runs counter to these significant interests, not to mention United States Supreme Court precedent.
¶ 88 The police took Gerald Mitchell's blood without a warrant while he was unconscious. According to the lead opinion[1] , this is perfectly fine because Mitchell by implication "voluntarily consented" to a blood draw and, while he was unconscious, did not revoke such consent.
¶ 89 Contrary to the lead opinion, I determine that "implied consent" is not the same as "actual consent" for purposes of a Fourth Amendment search. By relying on the implied consent laws, the lead opinion attempts to create a statutory per se exception to the constitutionally mandated warrant requirement. Thus, it embraces a categorical exception over the constitutionally required consideration of the totality of the circumstances. Consent provided *173 solely by way of an implied consent statute is constitutionally untenable.[2]
¶ 90 Accordingly, I respectfully dissent.
I
¶ 91 Mitchell was arrested for operating while intoxicated. En route to a nearby hospital, he lost consciousness. Despite Mitchell's incapacitation, a police officer read him the Informing the Accused form. Mitchell provided no response because he was unconscious. The officer then directed hospital staff to draw a sample of Mitchell's blood, and they did so. Mitchell remained unconscious as his skin was pierced and his blood taken.
¶ 92 Seeking to exclude the evidence obtained as a result of the blood draw, Mitchell filed a motion to suppress. He premised his motion on the contention that the warrantless taking of his blood while he was unconscious violated his Fourth Amendment rights.
¶ 93 The lead opinion rejects Mitchell's argument, concluding that the consent exception to the Fourth Amendment's warrant requirement applies. Lead op., ¶ 3. According to the lead opinion, Mitchell "voluntarily consented to a blood draw by his conduct of driving on Wisconsin's roads and drinking to a point evidencing probable cause of intoxication." Id. Further, in the lead opinion's view, Mitchell "forfeited all opportunity, including the statutory opportunity under Wis. Stat. § 343.305(4), to withdraw his consent previously given...." Id.
II
¶ 94 The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures. State v. Eason, 2001 WI 98, ¶ 16, 245 Wis. 2d 206, 629 N.W.2d 625. A warrantless search is presumptively unreasonable unless an exception to the warrant requirement applies. State v. Tullberg, 2014 WI 134, ¶ 30, 359 Wis. 2d 421, 857 N.W.2d 120.
¶ 95 One such exception to the warrant requirement is a search conducted pursuant to consent. State v. Artic, 2010 WI 83, ¶ 29, 327 Wis. 2d 392, 786 N.W.2d 430. The lead opinion correctly states that relevant words, gestures or conduct may support a finding of consent. Lead op., ¶ 20 (citing Artic, 327 Wis. 2d 392, ¶ 30, 786 N.W.2d 430 ).[3] However, it errs by departing from Mitchell's "words, gestures or conduct" to determine that he impliedly consented for the state to draw his blood.
¶ 96 The lead opinion's conclusion is based on Wisconsin's implied consent laws, one subsection of which provides that any *174 person operating a motor vehicle in Wisconsin "is deemed to have given consent to one or more tests of his or her breath, blood or urine" when requested to do so by a law enforcement officer in certain circumstances. Wis. Stat. § 343.305(2).
¶ 97 Another subsection specifically addresses the situation where a driver is unconscious. Wisconsin Stat. § 343.305(3)(b) provides that "[a] person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent under this subsection." It further states that a law enforcement officer may administer a breath, blood, or urine test if probable cause exists that the driver has committed any of a list of offenses. Id.
¶ 98 In determining whether the warrantless taking of a blood draw from an unconscious person pursuant to Wis. Stat. § 343.305(3)(b) violates the Fourth Amendment, I begin my analysis with Birchfield v. North Dakota, 579 U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016). In Birchfield, the United States Supreme Court determined that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." Id. at 2185.
¶ 99 Birchfield emphasized the invasive nature of a blood test, which is significant for Fourth Amendment purposes. See id. at 2184. In comparison to a breath test, a blood test is "significantly more intrusive[.]" Id. As an intrusion "beyond the body's surface," a blood test implicates paramount "interests in human dignity and privacy[.]" Id. at 2183 (citing Schmerber, 384 U.S. at 769-70, 86 S.Ct. 1826 ). Indeed, a blood test can provide a lot more information than just a person's blood alcohol content.[4]
¶ 100 The Birchfield court further addressed the precise circumstances that have arisen in this case:
It is true that a blood test, unlike a breath test, may be administered to a person who is unconscious (perhaps as a result of a crash) or who is unable to do what is needed to take a breath test due to profound intoxication or injuries. But we have no reason to believe that such situations are common in drunk-driving arrests, and when they arise, the police may apply for a warrant if need be.
136 S.Ct. at 2184-85 (emphasis added).
¶ 101 This language compels a single conclusion: law enforcement needed a warrant here. First, the State concedes that there were no exigent circumstances that would justify a departure from the warrant requirement.[5] Second, the ultimate holding in Birchfield was that a blood test cannot be administered as a search incident to arrest for drunk driving. Id. at 2185. The lead opinion's interpretation of the implied consent statutes attempts to accomplish exactly what the Birchfield court said violates the Fourth Amendment-a blood test as a search incident to the arrest of an unconscious person for drunk driving.[6]
*175 ¶ 102 Unlike the lead opinion, I would follow, rather than attempt to overrule, the court of appeals in State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867. The Padley court emphasized that, when analyzing whether there was a consensual search, the determining factor was whether the driver gave actual consent to the blood draw:
[T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give actual consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of "implied consent," choosing the "yes" option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the "no" option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent.
354 Wis. 2d 545, ¶ 39, 849 N.W.2d 867. As Justice Abrahamson has explained, "[t]he Padley court concluded that a driver's actual consent occurs after the driver has heard the Informing the Accused Form, weighed his or her options (including the refusal penalties), and decided whether to give or decline actual consent." State v. Brar, 2017 WI 73, ¶ 116, 376 Wis. 2d 685, 898 N.W.2d 499 (Abrahamson, J., dissenting).
¶ 103 That implied consent and actual consent are separate and distinct concepts is confirmed by an analysis of recent United States Supreme Court precedent in addition to Birchfield.[7] In Missouri v. McNeely, the Supreme Court determined that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." 569 U.S. 141, 156, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). A case by case determination is the antithesis of a categorical exception. Although McNeely was an exigent circumstances case, the court's emphasis on the totality of the circumstances suggests broad application of the case by case determinations it requires. Brar, 376 Wis. 2d 685, ¶ 122, 898 N.W.2d 499 (Abrahamson, J., dissenting).
¶ 104 Indeed, the Supreme Court implied such a broad application of McNeely in Aviles v. Texas, 571 U.S. 1119, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014). In Aviles, the Court vacated a Texas judgment upholding a warrantless blood draw based not on actual consent but on implied consent derived through the Texas implied consent law. 571 U.S. 1119, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014). The Court further remanded the Aviles case to the Texas court of appeals for further consideration in light of McNeely. Id.
¶ 105 " Aviles suggests that McNeely should be read broadly to apply to all *176 warrantless blood draws and that the Texas implied consent statute was not a per se exception to the Fourth Amendment justifying warrantless blood draws." Brar, 376 Wis. 2d 685, ¶ 123, 898 N.W.2d 499 (Abrahamson, J., dissenting). On remand the Texas court of appeals concluded that the Texas implied consent statute "flies in the face of McNeely's repeated mandate that courts must consider the totality of the circumstances of each case." Aviles v. State, 443 S.W.3d 291, 294 (Tex. Ct. App. 2014).
¶ 106 The upshot of these United States Supreme Court cases is that reliance on an implied consent statute to provide actual consent to a Fourth Amendment search violates McNeely 's requirement that each blood draw in a drunk driving case be analyzed on a case by case basis. The implied consent statute attempts to create a per se exception to the warrant requirement. Of course, categorical consent is by definition not individualized.
¶ 107 The lead opinion employs the simple act of driving an automobile as justification for a search. The untenability of the lead opinion's position is aptly illustrated by Justice Kelly's concurrence in Brar, 376 Wis. 2d 685, ¶¶ 59-66, 898 N.W.2d 499 (Kelly, J., concurring). As Justice Kelly explains, a court's normal constitutional inquiry into whether consent is given involves an examination of the totality of the circumstances and a determination that the consent was voluntary and not mere acquiescence to authority. Id., ¶¶ 59-62. On the other hand, "[f]or 'consent' implied by law, we ask whether the driver drove his car." Id., ¶ 64.
¶ 108 Further, the lead opinion errs by relying not on a constitutionally well-recognized exception to the warrant requirement, but instead on a Wisconsin statute, to curtail constitutional protections. By seeking to create a statutory, per se consent exception to the warrant requirement, the lead opinion further steps into a minefield. See lead op., ¶¶ 53-55 (asserting that Mitchell "forfeited the statutory opportunity to withdraw the consent to search that he had given.").
¶ 109 A blood draw is plainly a "search" for Fourth Amendment purposes. Birchfield, 136 S.Ct. at 2185. Accordingly, one has a constitutional right, not merely a statutory right, to refuse such a search absent a warrant or an applicable exception.[8] See State v. Dalton, 2018 WI 85, ¶ 61, 383 Wis. 2d 147, 914 N.W.2d 120. Under the lead opinion's analysis, however, the opportunity to refuse an unconstitutional search is merely a matter of legislative grace. If the ability to withdraw consent is merely statutory, could the legislature remove the ability to withdraw consent entirely? For the Fourth Amendment to have any meaning, such a result cannot stand.
¶ 110 I therefore conclude that implied consent is insufficient for purposes of a Fourth Amendment search. As the court of appeals explained in Padley, the implied consent law does not authorize searches. Rather, it authorizes law enforcement to require a driver to make a choice: provide actual consent and potentially give the state evidence that the driver committed a crime, or withdraw implied consent and *177 thereby suffer the civil consequences of withdrawing consent. Padley, 354 Wis. 2d 545, ¶ 39, 849 N.W.2d 867.
¶ 111 A person who is unconscious cannot make this choice. Because he was unconscious, Mitchell did not react to the Informing the Accused Form when law enforcement presented him with his options. He exhibited no "words, gestures, or conduct" that would indicate his actual consent to a blood draw. See Artic, 327 Wis. 2d 392, ¶ 30, 786 N.W.2d 430.
¶ 112 Because consent provided solely by way of an implied consent statute is not constitutionally sufficient, I determine that the results of Mitchell's blood draw must be suppressed. Accordingly, I respectfully dissent.
¶ 113 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

I join paragraphs 1-2 and 4-28 of the lead opinion.

The dissent believes Birchfield has already answered this question, and therefore concludes my "analytical exercise ultimately fails because it cannot be reconciled with Birchfield 's central holding: 'a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving.' " Dissent, ¶ 101 n.6 (quoting Birchfield v. North Dakota, --- U.S. ----, 136 S.Ct. 2160, 2185, 195 L.Ed.2d 560 (2016) ) (emphasis omitted). The Supreme Court stated that central holding, however, in the context of a suspect who, unlike Mr. Mitchell, was conscious. This is a distinction that Birchfield itself advanced, so it's entirely justifiable to explore its significance, as I have done in this opinion.
But there is an even more important reason the dissent should be chary of finding such a categorical prohibition in that precedent: Birchfield is not comfortable in its own skin. Its central logic is actually self-contradictory, which explains why both the court and the dissent are able to call on it for support. If the Supreme Court had endorsed implied-consent laws as sufficient to authorize a breath or blood test (as our court says), then it would have held that implied consent justified the breath test. But it didn't. It said the "search incident to arrest" exception to the Fourth Amendment's warrant requirement justified the breath test. On the other hand, if Birchfield forbids blood draws pursuant to an implied-consent law, as the dissent claims, then such a law could not justify the breath test either, inasmuch as the law either provides constitutionally-sound consent for both, or for neither.
So I disagree with the dissent that I cannot reconcile my analytical exercise to Birchfield 's central holding. When the Supreme Court speaks with two contradictory voices in one opinion, the best we can do is follow its logic until it starts contending with itself. Here, that means Birchfield stands for the proposition that, with respect to conscious drunk-driving suspects, the "search incident to arrest" doctrine covers breath tests, but not blood draws. Because Mr. Mitchell was not conscious, Birchfield does not control the disposition of this case.

The right to refuse a search, and to revoke consent once given, has been a part of Fourth Amendment jurisprudence for a very long time. See Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (stating that consent may be refused); United States v. Carter, 985 F.2d 1095, 1097 (D.C. Cir. 1993) (stating that consent may be withdrawn); United States v. Black, 675 F.2d 129, 138 (7th Cir. 1982) (same); Mason v. Pulliam, 557 F.2d 426, 428 (5th Cir. 1977) (stating that nothing in Schneckloth prevents consent from being withdrawn).

"[A] blood test, unlike a breath test, places in the hands of law enforcement authorities a sample that can be preserved and from which it is possible to extract information beyond a simple BAC reading. Even if the law enforcement agency is precluded from testing the blood for any purpose other than to measure BAC, the potential remains and may result in anxiety for the person tested." Birchfield v. North Dakota, 579 U.S. ----, 136 S.Ct. 2160, 2178, 195 L.Ed.2d 560 (2016).

See State v. Tullberg, 2014 WI 134, ¶ 30, 359 Wis. 2d 421, 857 N.W.2d 120.

The concurrence focuses on language in Birchfield stating a blood test's "reasonableness must be judged in light of the availability of the less intrusive alternative of a breath test." Birchfield, 136 S.Ct. at 2184 ; see concurrence, ¶¶ 77-79. It creatively interprets this language to indicate that, because a breath test was unavailable due to Mitchell's unconsciousness, a blood test was constitutionally reasonable. Id., ¶80. The concurrence's analytical exercise ultimately fails because it cannot be reconciled with Birchfield's central holding: "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." Birchfield, 136 S.Ct. at 2185 (emphasis added).
Federal and state courts around the country have cited the "but not a blood test" language a multitude of times. See, e.g., Robertson v. Pichon, 849 F.3d 1173, 1184 n.7 (9th Cir. 2017) ; Espinoza v. Shiomoto, 215 Cal.Rptr.3d 807, 829 (Ct. App. 2017) ; State v. Ryce, 306 Kan. 682, 396 P.3d 711, 717 (2017) ; State v. Reynolds, 504 S.W.3d 283, 307 (Tenn. 2016). The concurrence is unable to cite to any court that eschews the clear language of Birchfield 's central holding in favor of the unique interpretation it now embraces.

For further in-depth analysis of this assertion, see State v. Brar, 2017 WI 73, ¶¶ 119-126, 376 Wis. 2d 685, 898 N.W.2d 499 (Abrahamson, J., dissenting).

The lead opinion's reliance on South Dakota v. Neville, 459 U.S. 553, 560 n.10, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), is misplaced. See lead op., ¶¶ 38-39. Neville was decided pre-McNeely and pre-Birchfield. Both McNeely and Birchfield have had a significant effect on drunk driving law, and highlight the constitutional nature of a blood draw. Both cases analyze breath and blood tests as Fourth Amendment searches and appear to supersede the statement from the Fifth Amendment Neville case on which the lead opinion relies.